```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


BEVERLY BACA,

                    Plaintiff,

vs.                                     Case No. 14-4097-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.[1] The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Plaintiff amended her onset date, resulting in dismissal of her disability insurance claim (R. at 13). Plaintiff testified that she understood that amendment of her onset date would result in dismissal of her disability insurance claim (R. at 36-37).

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 19, 2013, administrative law judge (ALJ) Michael D. Mance issued his decision (R. at 13-24). Plaintiff alleges that she had been disabled since March 25, 2011 (R. at 13). At step one, the ALJ found that plaintiff did not engage in

4

substantial gainful activity since the alleged onset date (R. at 15). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 15). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 16). After determining plaintiff's RFC (R. at 18), the ALJ found at step four that plaintiff had no past relevant work (R. at 23). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23-24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III. Did the ALJ err in rejecting the opinion of advanced registered nurse practitioner (ARNP) Jean Nelson?**

On February 25, 2013, ARNP Nelson filled out a mental impairment questionnaire (R. at 737-742). ARNP Nelson stated that plaintiff had sought services in February 2009, and that case management for her was scheduled weekly, therapy was bi-weekly, medication clinic was every 1-3 months, and plaintiff was scheduled for group therapy 3 times weekly, but had trouble keeping appointments due to impairments (R. at 737). ARNP Nelson opined that plaintiff had no useful ability to remember work-like procedures due to impairment in memory as a result of attention deficit hyperactivity disorder (ADHD) and fibromyalgia. She further opined that plaintiff cannot maintain attention for two hour segments because of a severe impairment

5

in concentration and is easily distracted (R. at 739).  ARNP Nelson also opined that plaintiff is unable to meet competitive standards in the ability to sustain an ordinary routine without special supervision, work in coordination with others, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to supervisors, and deal with normal work stresses (R. at 739).  ARNP Nelson indicated that plaintiff would miss more than four days of work per month due to her impairments (R. at 742).

    The ALJ considered the opinion of ARNP Nelson, stating that ARNP Nelson indicated that plaintiff had no useful ability to carry out very short and simple instructions (R. at 22).  This is incorrect.  ARNP Nelson stated that plaintiff's ability to carry out very short and simple instructions was limited but satisfactory (R. at 739).

    Next, the ALJ indicated that ARNP Nelson is not an acceptable medical source, and thus, "she is not eligible to provide a medical opinion" (R. at 22).  The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources." SSR 06-03p, 2006 WL 2329939 at *1.  "Acceptable medical sources"

6

include licensed physicians and licensed or certified psychologists.  20 C.F.R. § 404.1513(a)(1)-(2); 20 C.F.R. § 404.1502.

An ARNP is not an "acceptable medical source" under the regulations.  20 C.F.R. § 404.1513(a).  However, evidence from "other medical sources," including an ARNP, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function.  Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.  The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals.  However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.  SSR 06-03p, 2006 WL 2329939 at **2,3,5.

The ALJ erred by stating that an ARNP is not eligible to provide a medical opinion.  Although an ARNP is not an

acceptable medical source, an opinion from an ARNP is an opinion from a medical source. However, the ALJ stated that he did consider her opinions using the factors set out in 20 CFR 416.927(d), which is consistent with SSR 06-03p (R. at 22). 2006 WL 2329939 at 4.

The ALJ then stated: "I assign no weight to this opinion because it is inconsistent with the claimant's ability to care for her two young children, watch movies, play cards, and cook simple meals" (R. at 22). No other reason was given by the ALJ for giving no weight to the opinions of ARNP Nelson.

Earlier in his opinion, the ALJ stated that plaintiff's activities of daily living are inconsistent with her allegation of disabling pain and fatigue. The ALJ noted that plaintiff testified that she cares for two children, ages four and six, with only occasional assistance from her mother and boyfriend. Plaintiff indicated that she drives, attends arthritis-swimming classes twice a week, cooks simple meals, helps her daughter with homework, performs personal care, and obtained a BA degree in biology in 2010.[2] Plaintiff also indicated that she spends time with friends, works two hours helping a lady in her home, works 2-4 hours as an office clerk, watches TV and movies, cares for her cat, performs light household chores, sews, works on puzzles, read and plays cards (R. at 19).

---

[2] Although plaintiff obtained a BA degree in 2010, her alleged onset date is March 25, 2011 (R. at 13).

First, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light**

**work**.  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.**'" Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**

> Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court stated:

> [The ALJ] attached great weight to the applicant's ability to do laundry, take public transportation, and shop for groceries. We have remarked the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (... [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases [citations omitted]."

705 F.3d at 278. Therefore, the fact that plaintiff cares for children and a cat, drives, attends arthritis-swimming classes, cooks, is able to handle personal care items, watches TV and movies, performs light household chores, sews, works on puzzles, reads and plays cards do not establish that plaintiff can work at a competitive level over an 8 hour day, or provide a basis for giving no weight to the opinions of ARNP Nelson. As for watching television, that is hardly inconsistent with

11

allegations of pain and related limitations. See Krauser, 638 F.3d at 1333.

Second, and more troubling, is the ALJ's mischaracterization of plaintiff's daily activities based on her testimony and reports. Although plaintiff testified that she received a BA degree in 2010, the ALJ failed to mention that plaintiff was accorded numerous accommodations, including extra time on exams, taking exams in a room that did not have any distractions, and missing class because of pain and fatigue (R. at 38-39). The ALJ failed to mention that plaintiff indicated that a lot of times she is not able to take a shower or bath (R. at 41), and according to her and her boyfriend is too fatigued or depressed and thus may go days without bathing (R. at 295, 358). The ALJ did not mention that plaintiff testified that her boyfriend goes shopping for her a lot of the time because it overwhelms her (R. at 42).

Although the ALJ stated that plaintiff cares for her children, with only occasional assistance from her mother and boyfriend, the ALJ did not mention plaintiff's testimony that once or twice a week she has to ask for help in caring for her children (R. at 46), and that her 6 year old misses school about once a week because she cannot get her to school, and the mother has been visited by a truancy officer about the problem (R. at

46-47). Her boyfriend indicated that plaintiff gets the kids ready if she can but that he does it a lot (R. at 294).

The ALJ also failed to mention that plaintiff testified that she has a case manager come by once a week, and a peer support worker twice a week. They help her with paperwork, projects or organizing things she wants to do (R. at 47-48).

The ALJ also noted that plaintiff works as an office clerk 2-4 hours a week; however, the ALJ did not mention that plaintiff testified she cannot work more than that due to pain and depression, that she misses days at that work, and they allow her to work at her schedule, not theirs (R. at 48-49).

The ALJ also failed to mention that plaintiff indicated that she forgets to eat or has no appetite, and that sometimes eating is not worth the frustration so she goes without (R. at 358). Her boyfriend indicated she goes so long without eating she feels like she will throw up (R. at 295). Plaintiff further stated that the kids will say they are hungry and she realizes they have not eaten anything for a long time (R. at 359). Her boyfriend indicated that it takes her a long time to prepare even a simple meal, she often gets side-tracked, and that she probably would not get it done if she is by herself with the kids (R. at 296). The boyfriend also noted that plaintiff tries to clean around the house or do laundry but gets fatigued very quickly (R. at 294).

13

The facts of this case, insofar as the ALJ mischaracterized plaintiff's daily activities, are very similar to those in Sitsler v. Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011):

> Mr. Sitsler also argues the ALJ mischaracterized the extent of his daily activities, ignoring the qualifications and limitations he consistently reported. The record reflects that Mr. Sitsler testified or otherwise reported that he has help from relatives in caring for his children; he usually has no energy to do housework; he makes only simple meals; he shops for 1–2 hours at most; he washes dishes for only a few minutes; he vacuums only once a week for a few minutes; and he does not drive very much. In contrast, the ALJ's findings regarding Mr. Sitsler's activities included none of these limitations. We have criticized this form of selective and misleading evidentiary review, holding that an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations. *See Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 742–43 (10th Cir.1993) (ALJ took claimant's testimony out of context, selectively acknowledged only parts of her statements, and presented his findings as accurate reflections of her statements); *see also Talbot v. Heckler*, 814 F.2d 1456, 1462, 1464 (10th Cir.1987) (ALJ improperly based conclusion claimant could do light work on mischaracterization of his activities).
>
> Although we will not upset an ALJ's credibility determination that is closely and affirmatively linked to substantial evidence, here the ALJ's analysis was flawed both by his reliance on mischaracterizations of the evidence and by his failure to consider the uncontroverted evidence of claimant's prescription pain medications.

> *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir.1996) ( "[T]he ALJ's evaluation of plaintiff's subjective complaints was flawed by his reliance on factors that were not supported by the record and by his failure to consider other factors that were supported by the record."). Therefore, we reverse and remand, directing the ALJ to properly evaluate the evidence with respect to claimant's credibility.

As was the case in <u>Sitsler</u>, the ALJ in this case mischaracterized the extent of plaintiff's daily activities, ignoring the numerous qualifications and limitations she consistently reported.  The ALJ's evaluation of plaintiff's credibility was flawed by his mischaracterization of the evidence.  Furthermore, the ALJ relied on this mischaracterization of her daily activities to give no weight to the opinion of ARNP Nelson.  The ALJ offered no other reason for giving no weight to the opinions of ARNP Nelson.

Plaintiff's daily activities, including the many qualifications and limitations ignored by the ALJ, do not establish that plaintiff can perform substantial gainful activity, and are not clearly inconsistent with the limitations contained in the report of ARNP Nelson.  The court therefore finds that the ALJ failed to provide a rational or reasonable basis for according no weight to the opinions of ARNP Nelson, a treatment provider.

The ALJ also failed to consider the opinions of Dr. Policard, who stated on April 24, 2012 that plaintiff has very poor concentration, often forgets appointments unless called to remind her, she may not come as she falls asleep, and is frequently late when she does come even after the call. He stated that she continues to struggle to get simple things done because her thinking is out of her control much of the time (R. at 681). This opinion is consistent with the opinions of ARNP Nelson, and with the numerous qualifications and limitations in her daily activities.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

Furthermore, according to SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion. Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

For the reasons set forth above, the court finds that substantial evidence does not support the ALJ's determination that plaintiff is not disabled. On remand, the ALJ must reevaluate the opinions of ARNP Nelson after considering the opinions of Dr. Policard, and after giving consideration to the numerous qualifications and limitations in her daily activities. The ALJ shall also make new credibility findings after giving proper consideration to the opinions of Dr. Policard, ARNP Nelson, and the numerous qualifications and limitations in her daily activities.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 13th day of October 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge